*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

No. 04-08-00695-CR

Frances Ann **LOPEZ**,
Appellant

v.

**STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-9282
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
               Phylis J. Speedlin, Justice
               Steven C. Hilbig, Justice

Delivered and Filed: February 3, 2010

AFFIRMED

Frances Ann Lopez was sentenced to thirty years in prison after a jury convicted her of murdering her husband. Lopez appeals the judgment, complaining the trial court erred in: (1) denying her motion to suppress statements she made to investigators; (2) ruling on several evidentiary matters; and (3) failing to grant a mistrial when the prosecutor commented during closing argument on her failure to testify. We affirm the judgment of the trial court.

## *Background*

On January 8, 2006, Eloy Hernandez Jr. was found dead in his home by Lopez and her daughter. Bexar County Deputy Sheriff, George Barrera, Jr., testified Lopez told him she left her home the morning of January 7, 2006 and did not return until 1:40 a.m. on January 8, 2006. Lopez told Barrera that when she arrived home she noticed the front door open and after entering she found her husband's body on their bed. She then yelled to her daughter to call the Bexar County Sheriff's office to report the death.

Sergeant Martin Molina also spoke with Lopez and asked if she knew of anyone who might have wanted to harm her husband. Lopez told Sergeant Molina that Hernandez had a girlfriend who had made threatening comments toward Lopez and her family. Lopez agreed to provide a statement, and she and her daughter rode with Lopez's sister to the sheriff's office.

At the sheriff's office, Lopez's sister and daughter were seated in a lobby area, and Lopez was taken into an office in the criminal investigations section. Detective David Davila, a homicide investigator with the sheriff's office, took Lopez's statement by having her sit next to him so she could see the screen as he typed the information she provided. Lopez made corrections to the statement as it was being typed. At one point during this process, Lopez agreed to undergo a gunshot residue (GSR) test to determine if she had recently fired a gun. According to Detective Davila, Lopez claimed to have fired her pistol earlier in the week. Detective Davila testified he left the room after the statement was completed to allow Lopez time to review the statement before signing it. Detective Davila discussed the statement with Sergeant Molina and told him he was concerned about several inconsistencies in Lopez's statement. Detective Davila told Sergeant Molina that if Lopez signed the statement, he intended to advise her of her "Miranda" rights.

Detective Davila returned to the office and asked Lopez if any part of the statement needed to be changed. According to Detective Davila, Lopez commented that the statement made her "look bad," but when asked if she wanted to change anything she declined and signed the statement.[1] Detective Davila told Lopez he was going to advise her of her rights because there were inconsistencies in her statement that required further questioning. Detective Davila testified Lopez began to cry while he was reading her rights from a card. However, she signed the card, indicating she understood her rights against self-incrimination. Detective Davila then turned and looked at Lopez and said "You shot him, right?" Detective Davila testified Lopez nodded in agreement. Detective Davila asked her if she wanted to tell him about it, and Lopez said "No, you'll put me in jail." Lopez was then placed under arrest. Sergeant Molina testified he witnessed Detective Davila reading Lopez her rights and Lopez nodding her head when asked if she shot her husband. Sergeant Molina also testified he heard Detective Davila tell Lopez she was going to jail after she admitted shooting her husband.

Lopez then told Detective Davila her husband had beat her, and she agreed to write a list of witnesses who could testify about the abuse. Detective Davila left the room and Sergeant Molina continued to talk with Lopez, who then agreed to give a second statement. Sergeant Molina went over her rights again and she provided a second statement in the same manner as the first. The second statement contains on the face of the document the warnings required by article 38.22. Although Lopez never admitted in her first statement to being involved in her husband's death, in her second statement she stated she did not remember "how I shot him." Lopez also claimed in her

---

[1] This first statement did not include the warnings required by article 38.22 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005). Lopez does not challenge admissibility of the first statement.

second statement that her husband had abused her the morning of the shooting and abuse had occurred in the past. She also provided a handwritten list of people who witnessed the abuse.

Detective Davila testified Lopez acknowledged each of her rights when he read them to her. Sergeant Molina testified Lopez understood her rights and that she voluntarily made her second written statement.

## DISCUSSION

### *Motion to Suppress*

In separate points of error, Lopez asserts the trial court erred in denying her motion to suppress her second written statement, Detective Davila's testimony that she nodded her head in response to the question whether she shot her husband, and the handwritten witness list. Lopez argues the admission of this evidence violated the Constitution of the United States and Texas law. In particular, Lopez contends: the second written statement was involuntary because of coercive measures used by the deputies; the "head nod" took place while she was in custody and failed to comply with article 38.22 of the Texas Code of Criminal Procedure; and the witness list was created after she had been formally arrested and did not comply with the warning requirements of article 38.22.

We review the trial court's ruling on a motion to suppress for abuse of discretion, using a bifurcated standard. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We view the record in the light most favorable to the trial court's ruling and will reverse only if the ruling is outside the zone of reasonable disagreement. *Id*. We give almost total deference to the trial court's findings of historical fact supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App.

1997). We review *de novo* the trial court's determination of the law and its application of the law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of the law applicable to the case. *Dixon*, 206 S.W.3d at 590.

At the suppression hearing, Sergeant Molina and Detective Davila testified to the facts set out above. Lopez testified at the hearing that she voluntarily went to the sheriff's office to provide a statement and did not believe she was under arrest. She also testified she agreed to undergo the GSR test. However, she contradicted the deputies' testimony, stating Detective Davila told her she would be placed under arrest as he read her the Miranda rights. She also testified she thought she was under arrest when her rights were read. Lopez denied making any indication that she shot her husband.

After the hearing, the trial court found: (1) the testimony of the deputies was credible; (2) Lopez voluntarily went to the sheriff's office; (3) after giving the first statement, Lopez became a suspect and her Miranda rights were read to her; (4) Lopez's second written statement was voluntarily made and complied with the requirements of article 38.22; (5) the list of witnesses was obtained "in the due course of taking the [second] statement;" (6) there was substantial compliance with article 38.22 concerning the list of witnesses; and (7) the "head nod" was admissible. Neither party requested any additional findings of fact or conclusions of law. *See* TEX. CODE CRIM. PROC. art. 38.22 § 6 (Vernon 2007)(trial court must make findings of fact and conclusions of law concerning admissibility of defendant's statements when questions of voluntariness are raised).

*Head Nod*

Lopez contends the trial court erred by refusing to suppress evidence that she nodded her head affirmatively after Detective Davila stated, "You shot him, right?" Lopez claims the head nod occurred while she was in custody and did not comply with the recording requirements of article 38.22, section 3, of the Code of Criminal Procedure. The requirements of article 38.22, section 3 are triggered only by custodial interrogations. *See Nguyen v. State*, 292 S.W.3d 671, 676-77 (Tex. Crim. App. 2009). If Lopez was not in custody at the time of the head nod, then article 38.22 does not apply. *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007).

Custody for purposes of article 38.22 occurs in one of two ways: (1) when an individual is formally arrested, or (2) when an individual's freedom of movement has been restrained to the degree associated with a formal arrest. *Nguyen*, 292 S.W.3d at 677; "[B]eing the 'focus' of an investigation does not necessarily render a person 'in custody' for purposes of receiving *Miranda* warnings or those required under article 38.22 of the Code of Criminal Procedure." *Gardner v. State*, No. AP-75,582, 2009 WL 3365652 * 9 (Tex. Crim. App. October 21, 2009). A person is in custody only if, under the circumstances, "a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Herrera*, 241 S.W.3d at 525.

If Lopez was not in custody, then evidence of her affirmative head nod was admissible. The trial court did not make an explicit finding that Lopez was not in custody at the time of the affirmative head nod; however, the record supports such an implicit finding. Both Sergeant Molina and Detective Davila testified the affirmative head nod was in response to the question asked by Detective Davila. Although the question took place after Lopez was read her Miranda rights, both

deputies testified Lopez was still free to leave because her status did not change until after she nodded her head, admitting she shot her husband. The court found the deputies' testimony credible, and Lopez admitted she voluntarily went to the sheriff's office. We defer to the trial court on the credibility and demeanor of the witnesses, and hold the evidence supports the trial court's implicit determination that Lopez was not in custody when she nodded her head. Even though Lopez testified she did not feel free to leave once the Miranda rights were administered, the trial court apparently did not credit this testimony in the face of the deputies' testimony concerning the circumstances surrounding the statement. The trial court did not abuse its discretion in admitting testimony of the affirmative head nod.

*Second Written Statement*

Lopez contends her second written statement should have been suppressed because it was involuntary and resulted from "overbearing" and coercive police actions. To support her contentions, Lopez points to her testimony during the suppression hearing that: (1) Sergeant Molina promised to let her see her son after she gave the second statement; (2) Sergeant Molina told her she needed to tell the truth or she would not see her children again; and (3) the deputies used psychological ploys involving her claim of being an abused spouse to overcome her will. However, Sergeant Molina denied promising Lopez she would see her son if she signed the statement. He testified about the circumstances surrounding the taking of the statement, indicating it was not done in a coercive manner. Deferring to the trial judge's credibility determinations supported by the record, we hold the trial court did not abuse its discretion in finding the statement was voluntary.

*Witness List*

Lopez argues the handwritten witness list was a custodial statement that did not comply with article 38.22, section 2, of the Texas Code of Criminal Procedure because no warnings appeared on the face of the document. The State apparently concedes Lopez wrote the witness list while in custody, but argues the list was admissible because it substantially complied with requirements of article 38.22, section 2. Written statements that do not contain the exact warnings required by article 38.22 may be admissible if the State can demonstrate substantial compliance with article 38.22. *See Cockrell v. State*, 933 S.W.2d 73, 91 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1173 (1997).

The State argues it substantially complied with article 38.22 because warnings similar to those required were orally given by the deputies, the warnings appeared on the second written statement in which Lopez confesses to the murder, and Lopez initialed and signed a rights card prior to writing the witness list. However, the State does not cite a case, and our research has failed to disclose any, in which oral warnings or warnings on another document have been held to constitute substantial compliance. Here, none of the warnings required by article 38.22 appear on the face of the document. We hold the State did not substantially comply with article 38.22, and the trial court erred in admitting the statement. *See Cockrell*, 933 S.W.2d at 91; *see also Nonn v. State*, 117 S.W.3d 874, 879-81 (Tex. Crim. App. 2003) ( statement that omitted one of the required warnings held not to be in substantial compliance with article 38.22).

Having found error, we must determine whether the error requires reversal. The admission of the witness list in violation of article 38.22 is a non-constitutional error and requires reversal only if it affected the defendant's substantial right. *Woods v. State*, 152 S.W.3d 105, 118 (Tex. Crim. App. 2004), *cert. denied*, 544 U.S. 1050 (2005). A defendant's substantial rights are affected when

the error had a substantial and injurious affect or influence on the jury's verdict. *Id.* If the error had no or only a slight influence on the verdict, the error is harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In making this determination, we consider the entire record, including testimony, physical evidence, jury instructions, the State's theories and any defensive theories, closing arguments, and voir dire if applicable. *Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

Neither the witness list nor testimony about the list played a major role in the State's case. The only trial testimony regarding the list was from Detective Davila, who told the jury he contacted each person on the list and was unable to confirm Lopez's claims that she was abused by her husband. Although the State referred to the list twice during closing argument, the references were merely to acknowledge the existence of the list and to respond to the defense's argument that the sheriff's office failed to conduct a complete investigation. The jury heard testimony regarding Lopez's confession, her admissions to the deputies, and the results of the gun residue tests indicating she had recently fired or was in close proximity to a fired weapon. The jury also heard evidence the killing took place in a manner that indicated the shooter had some rage or anger against the victim. And the State presented evidence of a motive — Lopez was angry at her husband because he had an affair with another woman. In light of the evidence against Lopez, we conclude admission of the witness list did not affect her substantial rights.

Accordingly, Lopez's points of error concerning the admission of her statements are overruled.

### *Evidentiary Issues*

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). The trial court's ruling will not be reversed on appeal absent a clear abuse of discretion. *Id.* An abuse of discretion occurs when "its decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree." *Id*. In rare circumstances, erroneous evidentiary rulings may violate constitutional protections of due process. *Potier v. State*, 68 S.W.3d 657, 660-65 (Tex. Crim. App. 2002).

### *Alternative Perpetrator*

Lopez argues the trial court violated her constitutional right to present a defense when it excluded evidence that Lopez contends demonstrates the victim was killed by another person. The evidence at issue included: hearsay testimony the victim may have had "a lot of" enemies; the victim dealt drugs; the victim was seen with a gun months before the killing; and the victim may have been affiliated with a gang that had experienced internal strife that led to the killing of at least two members of the gang. After conducting a hearing outside the presence of the jury, the trial court concluded the evidence was "largely irrelevant" and the probative value of the evidence was substantially outweighed by its prejudicial effect, and ruled the evidence inadmissible. *See* TEX. R. of EVID. 401 (defining relevant evidence), 402 (non-relevant evidence is inadmissible), & 403 (relevant evidence may be excluded if probative value is substantially outweighed by its prejudicial effect).

When a defendant seeks to introduce evidence of an "alternative perpetrator," he must establish a sufficient nexus between that person and the crime. *Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002), *cert. denied*, 537 U.S. 949 (2002).

> In weighing probative value against Rule 403 counterfactors, courts must be sensitive to the special problems presented by "alternative perpetrator" evidence. Although a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged "alternative perpetrator."

*Id.* It is not sufficient for a defendant to proffer "unsupported speculation" that another person may have committed the crime. *Id.* at 407 n. 23 (*citing United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998), *cert. denied*, 526 U.S. 1007 (1999)).

Lopez did not provide a sufficient nexus between some alternative perpetrator and the murder of the victim. None of the evidence pointed to a particular individual as responsible for the killing. The proffered evidence amounted to no more than mere speculation that another person may have committed the crime. We hold the trial court did not err in excluding the evidence.

*Text and Voice Messages*

Lopez asserts the trial court erred in allowing the State to place into evidence a recording of two voice messages left by Lopez on a phone belonging to Nakita Guerrero and a transcript of several text messages that were exchanged between Lopez and Guerrero the day the victim was killed. The content of the messages centered on Guerrero's sexual relationship with the victim. Lopez contends that any probative value of the evidence was substantially outweighed by the danger of unfair prejudice because the evidence contained vulgar and profane language used by her and demonstrated her anger toward Guerrero, the admitted paramour of the victim. The State responds the messages were admissible because they supplied evidence of motive — Lopez was angry about her husband's affair with Guerrero and that anger was present on the day of the killing.

We hold the trial court did not abuse its discretion in admitting the evidence. The messages were clearly relevant to motive and the probative value was not substantially outweighed by any prejudicial effect.

### Comment on Defendant's Failure to Testify

Lopez next argues the trial court erred in denying her a mistrial when the State commented during closing argument on her failure to testify. The comment was made when the State was discussing its failure to produce the gun at trial. The prosecutor initially argued Lopez had ample opportunity to dispose of the gun and continued by stating:

> Why don't we have it? I wish we could bring it here for you. But, unfortunately, Frances Lopez didn't tell anybody where she put the gun, so we don't have it.

Lopez objected that the argument was a comment on her failure to testify. The court sustained the objection, instructed the jury to disregard the statement, but denied Lopez's request for a mistrial.

The denial of a mistrial is reviewed under an abuse of discretion standard. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). The trial court's ruling will be upheld on appeal so long as it is within the zone of reasonable disagreement. *Id.* Prosecutorial argument is considered a comment on a defendant's failure to testify when the language used was "manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Busby v. State*, 253 S.W.3d 661, 666 (Tex. Crim. App.), *cert. denied*, 129 U.S. 625 (2008) (*quoting Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007)). "It is not sufficient that the language used might impliedly or indirectly be so construed." *Busby*, 253 S.W.3d at 666. The full context of the prosecutor's statement must be considered in determining whether a jury would "necessarily and naturally" interpret the comment as a reference to the defendant's failure to testify. *Cruz*, 225 S.W.3d at 549.

The State contends the comment was a reference to Lopez's confessions rather than a comment on her failure to testify. While the comment was not an explicit reference to her statements, based on the context of the argument, we cannot say it was "manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." S*ee Busby*, 253 S.W.3d at 666*; Cruz*, 225 S.W. 3d at 549. Accordingly, the trial court did not abuse its discretion in denying the mistrial.

### *Conclusion*

The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

PUBLISH