*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





# MEMORANDUM OPINION

No. 04-09-00794-CR

Jack Lee **KING**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CR-1358
Honorable Philip A. Kazen, Jr., Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Phylis J. Speedlin, Justice

Delivered and Filed:  February 2, 2011

AFFIRMED

Jack Lee King was convicted of murder and sentenced to sixty years in prison. In two issues on appeal, King complains of the trial court's exclusion of evidence in the guilt-innocence and in the punishment phases of trial. We affirm the trial court's judgment.

**DISCUSSION**

Both of King's issues concern the trial court's exclusion of evidence. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

In July 1993, Johnny Perez, the deceased victim, was reported missing. It was not until 2006, that Bexar County Sheriff's Office Investigator Adrian Ramirez discovered new information when he began re-interviewing witnesses in connection with Perez's disappearance. Through a series of interviews, Investigator Ramirez obtained information about a party at the Falcon Body Shop in 1993, which Perez and King attended together. Perez was acting drunk, obnoxious, intimidating, and insulting. At one point, King left the party on foot, but returned fifteen minutes later. Witnesses stated that after King returned, he shot Perez in the head and then drove away with Perez in the car with him. Some witnesses stated that King later told them he had shot Perez and buried the body. King, who testified on his own behalf, said that he was with Perez that night, but that when they stopped for gas, Perez left with a lady in a brown or maroon Cutlass. Perez's body was never found.

In his first issue, King argues that when the trial court sustained the State's relevance objection to the testimony of Debra Negrete, King's girlfriend, it denied him his constitutional right to present an alternative perpetrator defense. According to King, Negrete should have been allowed to testify that Perez had been physically abusive toward her and that he was a drug user. King argues this testimony indicates Perez had enemies who might have killed him. In other words, King argues that the possibility of Perez having enemies raised the alternative perpetrator defense.

Before ruling the testimony inadmissible, the trial court listened to Negrete's testimony outside the presence of the jury. Negrete testified that Perez had been her boyfriend and was the father of her child. She stated that Perez had been physically abusive with her to the point of leaving visible bruises or marks. She also stated that Perez had used drugs but did not sell them. Further, she testified that she did not know of any enemies Perez had made. The trial court sustained the State's objections to relevance.

In *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002), the Texas Court of Criminal Appeals considered evidentiary issues as they relate to presenting an alternative perpetrator defense. The court discussed two ways in which rulings excluding evidence might rise to the level of violating the constitutional right to present a meaningful defense. *See id.* (discussing *Potier v. State*, 68 S.W.3d 657 (Tex. Crim. App. 2002)). The first involves an evidentiary rule that categorically and arbitrarily prohibits the defendant from offering relevant evidence that is vital to his defense. *Id.* The second involves "a trial court's clearly erroneous ruling excluding otherwise, relevant, reliable evidence [that] 'forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense.'" *Id.* (quoting *Potier*, 68 S.W.3d at 665). The court described this second scenario as one in which "the erroneous ruling goes to the heart of the defense." *Id.* Like this case, in *Wiley*, the court was presented with the second scenario.

In *Wiley*, the appellant, who was charged with arson, argued the trial court erred in excluding evidence that a known "fire-starter," who had been ejected a few days earlier from the restaurant that burned, stood across the street watching it burn. *Id.* According to the appellant, although this known "fire-starter" did not have the intellectual capacity to "set this sophisticated fire," he may have assisted someone else in starting the fire. *Id.* at 406. Thus, the appellant

argued that "had the jury been permitted to hear evidence that another person could have committed the offense, they might have entertained a reasonable doubt as to Appellant's guilt." *Id.* at 405.

In finding the trial court did not err in excluding the evidence under Texas Rule of Evidence 403, the Court stated the following:

> In weighing probative value against Rule 403 counterfactors, courts must be sensitive to the special problems presented by "alternative perpetrator" evidence. Although a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged "alternative perpetrator."

*Id.* at 406. The court found the evidence suggesting another individual started the fire was "both meager and speculative." *Id.* And, according to the court, even if the evidence was marginally relevant, it could not survive the Rule 403 balancing test. *Id.* at 407. The court explained that the probative value of the evidence was slight because it was speculative. *Id.* Further, the evidence "present[ed] a great threat of 'confusion of the issues' because it would have forced the State to attempt to disprove the nebulous allegation" that some other person was involved as an assistant to an unknown arsonist in burning down the restaurant. *Id.* The court concluded,

> It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice.

*Id.*

Our court, as recently as last year, likewise dealt with evidentiary issues as they related to the alternative perpetrator defense. *See Lopez v. State*, 314 S.W.3d 54 (Tex. App.—San Antonio 2010, pet. ref'd). In *Lopez*, the defendant was charged with and convicted of murder. *Id.* at 56. She contended the trial court violated her right to present the defense of alternative perpetrator

when it excluded evidence that "the victim may have had 'a lot of' enemies; the victim dealt drugs; the victim was seen with a gun months before the killing; and the victim may have been affiliated with a gang that had experienced internal strife that led to the killing of at least two members of the gang." *Id.* at 61. Our court, in finding no error, stated the following:

> Lopez did not provide a sufficient nexus between some alternative perpetrator and the murder of the victim. None of the evidence pointed to a particular individual as responsible for the killing. The proffered evidence amounted to no more than mere speculation that another person may have committed the crime.

*Id.* at 61-62.

For the same reasons given by the court of criminal appeals in *Wiley* and our court in *Lopez*, the trial court in the case before us did not err in excluding the evidence that King had been physically abusive to his girlfriend and had used drugs. King not only did not provide a nexus between an alternative perpetrator and Perez's murder, but he also failed to identify any particular individual who might have been responsible for killing Perez. Perez's violent tendencies toward his girlfriend and his history of drug use amount to no more than speculation that another person may have killed Perez. And, the evidence would present a threat of confusing the issues since the State would be forced to disprove King's contention that some unknown person may have committed the murder. Thus, we hold the trial court did not err in excluding Negrete's testimony regarding Perez's violent tendencies toward her and his drug use.

In his second issue, King argues that, during the punishment phase of the trial, the trial court erred in again refusing to allow Negrete to testify that Perez was physically abusive toward her and used drugs because such evidence was relevant to counter the State's evidence that Lopez was a good soldier and loving family member. In other words, according to King, the

State opened the door to evidence of Perez's character, and therefore it should not have been excluded.

Again, we look to guidance from the Texas Court of Criminal Appeals. In *Hayden v. State*, 296 S.W.3d 549 (Tex. Crim. App. 2009), the trial court was faced with a similar argument during the punishment phase following a murder conviction. In that case, the appellant argued that the trial court erred in excluding evidence that the murder victim was a convicted sex offender. *Id.* at 552. In finding no error, the court of criminal appeals discussed the admissibility of evidence during punishment and noted that evidence is admissible if "the court deems [it] relevant to sentencing." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon 2006)). According to the court, evidence is relevant in the punishment phase "if it helps the factfinder decide what sentence is appropriate for a particular defendant given the facts of the case." *Id.*

Here, evidence showing Perez had displayed violent behavior toward his girlfriend or that he used drugs was in no way relevant to helping the factfinder decide the appropriate sentence for King. The evidence only showed that Perez was perhaps not as worthy as others who might fall victim to a murderer. As the court stated in *Hayden*, "evidence that draws comparisons between the victim and other members of society based on the victim's worth or morality should usually be excluded under Rule 403." *Id.*

The appellant in *Hayden* also raised the same issue King has — that the evidence was offered to rebut the false impression of the victim's character created by the State. *See id.* at 554. In *Hayden*, however, the court found that even where a party opens the door to rebuttal evidence, the trial judge still has discretion to exclude the evidence under Rule 403. *Id.* And, the court in *Hayden* found no error because any false impression created was not directly relevant to the

offense charged. *Id.* In other words, the victim's character was a collateral issue, not relevant to the jury's decision on the appropriate sentence to impose on the defendant. *Id.* According to the court, allowing the defendant to elicit such evidence "would waste time and confuse the issue by focusing the jury's attention on the victim's character rather than the defendant's personal responsibility and moral culpability." *Id.* at 554-55.

Likewise, in this case, regardless of whether the State opened the door, the evidence King wanted to present was collateral and irrelevant to the sentence imposed on King. Negrete's testimony that Perez had abused her and that he used drugs would result in the jury focusing its attention on Perez's character rather than on King's personal responsibility and moral culpability. Therefore, the trial court did not abuse its discretion in excluding the proffered testimony.

## CONCLUSION

Accordingly, we affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish