# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00334-CR

**Teran Pennick, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C-1-CR-13-200027, HONORABLE BRANDY MUELLER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Teran Pennick of the misdemeanor offense of driving while intoxicated.[1] The trial court assessed punishment at confinement for one year and a fine of $4,000 but suspended imposition of the sentence and placed Pennick on community supervision for a period of two years. In two issues on appeal, Pennick asserts that the trial court abused its discretion by admitting certain statements that he made following his arrest and that the evidence is insufficient to prove that he was intoxicated while operating a motor vehicle in a public place. We will affirm the order placing Pennick on community supervision.

### BACKGROUND

The jury heard evidence that shortly after midnight on January 1, 2013, Deputy Kimberly Orts of the Travis County Sheriff's Office responded to a report of an automobile accident

---

[1] *See* Tex. Penal Code § 49.04.

at the 12800 block of New Katy Lane in Manor. Orts testified that when she arrived at the scene, she observed a vehicle parked in a ditch off the side of the road. The first person whom Orts encountered at the scene was a woman, later identified as Pennick's girlfriend, Shaunna Johnson, who had called the police to report the incident. Orts testified that Johnson directed her attention to a man, later identified as Pennick, who was standing several feet away from the vehicle. Orts explained that when she attempted to make contact with Pennick, "He was just ranting and raving; screaming; walking around; didn't seem to be oriented to what was going on. And when I attempted to ask him to come talk to me, he was belligerent and cursing and attempted to walk away from me, actually." Orts added that Pennick was "yelling" at her and "kind of throwing his arms around; flailing around" and that his behavior led Orts to believe that he was "under the influence of something." Orts further testified that when she asked Pennick to talk to her and "explain what was going on," Pennick responded by approaching her in what Orts characterized as "kind of an aggressive manner." She explained, "[H]is body was kind of forward. His arms were bowed, and he was coming at me with a look that I felt he was about to assault me." According to Orts, she repeatedly instructed Pennick to "get on the ground" as he approached her and that, when he did not do so, she "deployed a taser" on him and, once he was under control, arrested him. Orts testified that Pennick's demeanor changed following his arrest, "going from highly belligerent to very apologetic, to crying at one point, to being aggressive again. What I call a roller coaster of emotions." Following Pennick's arrest, Orts further testified, she did not have him perform any field sobriety tests because she did not believe it was safe to allow him to do so, given his aggressive behavior toward her.

Orts transported Pennick to jail, asked him to provide a breath or blood sample, and, when he refused, obtained a search warrant to draw his blood. According to the evidence presented, the results of the blood test indicated that Pennick's blood alcohol level at the time of the draw was .157, almost twice the legal limit. Other evidence considered by the jury, which we discuss in more detail below, included a video recording of Pennick's transport to the jail, in which he can be heard calling Orts names and using vulgar language; the testimony of Johnson, who testified for the defense and claimed that Pennick was not intoxicated on the night of his arrest; and the testimony of Chassie Nuckols, Johnson's niece, who claimed that she had observed Pennick drinking at a party several hours prior to his arrest. Based on this and other evidence, the jury found Pennick guilty of driving while intoxicated, and the district court placed him on community supervision as indicated above. This appeal followed.

## ANALYSIS

### Admissibility of recording

During Orts's testimony, the State offered into evidence a video recording of Pennick being transported to the jail following his arrest. During the recording, Pennick can be heard making several statements in which he uses vulgar language directed at Orts, including using the phrase "fuck you" and calling Orts a "bitch." Pennick objected to the admission of these statements on the ground that they were more prejudicial than probative. The trial court overruled the objection and

3

admitted the recording in its entirety.[2]  In his first issue, Pennick asserts that the trial court abused its discretion by admitting the statements.

We review a trial court's ruling on the admission or exclusion of evidence for abuse of discretion.[3]  A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement."[4]  We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the trial court's decision if it lies within the zone of reasonable disagreement.[5]  If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of law applicable to that ruling, we will uphold the decision.[6]

---

[2] *See* Tex. R. Evid. 403.  The State asserts that Pennick, by failing to explicitly invoke the language of Rule 403 in his objection, did not adequately preserve error in the court below. However, the Court of Criminal Appeals has rejected what it characterizes as "hyper-technical requirements for preservation" and has repeatedly held that "'all the party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013) (quoting *Layton v. State*, 280 S.W.3d 235, 239 (Tex. Crim. App. 2009)). Here, Pennick argued in his objection that the statements were "not relevant to intoxication" but were instead "just prejudicial to get the jury to hate him," and there is no indication in the record that the trial court understood Pennick's complaint to be anything other than a Rule 403 objection.  On this record, we conclude that Pennick's complaint preserved error in the court below.

[3] *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

[4] *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).

[5] *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009).

[6] *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."[7] "[A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted."[8] "'Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.'"[9] "All evidence is prejudicial to one party or the other—it is only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable."[10]

Here, the trial court would not have abused its discretion in finding that the probative value of the evidence was high. The main issue in the case was whether Pennick was intoxicated. It would not be outside the zone of reasonable disagreement for the trial court to conclude that

---

[7] Tex. R. Evid. 403.

[8] *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

[9] *Martinez*, 327 S.W.3d at 737 (quoting *Young v. State*, 283 S.W.3d 854, 876 (Tex. Crim. App. 2009)).

[10] *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012).

5

video evidence tending to show that Pennick was being verbally abusive to a police officer following his arrest had a strong tendency to prove that Pennick was acting in a manner consistent with intoxication. Moreover, the record reflects that Pennick's defensive strategy was to attack the credibility of Deputy Orts and to establish that she was not telling the truth regarding Pennick's aggressive behavior. Thus, it would not be outside the zone of reasonable disagreement for the trial court to find that the statements on the recording tended to corroborate Orts's testimony and were important to the State for that reason. Finally, because these were Pennick's own statements, it would not be outside the zone of reasonable disagreement for the trial court to conclude that they were strong evidence of Pennick's state of mind at the time of the offense.

On the other hand, the trial court would not have abused its discretion in finding that the danger of "unfair" prejudice was low. It would not be outside the zone of reasonable disagreement for the trial court to find that the challenged statements, although vulgar and disrespectful, were not threatening to the officer or so inflammatory as to suggest that they would cause the jury to make a decision on an improper, irrational basis. On this record, we cannot conclude that the trial court abused its discretion in admitting the evidence.[11]

We overrule Pennick's first issue.

---

[11] *See Lopez v. State*, 314 S.W.3d 54, 62 (Tex. App.—San Antonio 2010, pet. ref'd) (recording of two voice messages and transcript of several text messages containing vulgar and profane language by defendant not more prejudicial than probative because they were "clearly relevant" to offense and were not "substantially outweighed" by any prejudicial effect); *Roberts v. State*, 795 S.W.2d 842, 845 (Tex. App.—Beaumont 1990, no pet.) (holding that probative value of "vulgar allegations" in letter written by defendant outweighed "whatever prejudice" might be inferred from statements).

**Sufficiency of the evidence**

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place.[12] In his second issue, Pennick asserts that the evidence is insufficient to sustain his conviction for that offense. Specifically, Pennick claims that the evidence is insufficient to show that (1) he was intoxicated while operating a motor vehicle and (2) he operated the vehicle in a public place.

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt.[13] We must consider all the evidence in the record, whether direct or circumstantial or properly or improperly admitted.[14] We assume that the jury resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict, and we defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony.[15]

We reject Pennick's claim that the evidence is insufficient to prove that he was intoxicated at the time he operated a motor vehicle. In addition to Deputy Orts's testimony, summarized above, tending to show that Pennick behaved aggressively and erratically prior to, during, and following his arrest, there was other evidence from which a rational jury could have

---

[12] *See* Tex. Penal Code § 49.04(a).

[13] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

[14] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[15] *Jackson*, 443 U.S. at 318-19; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010); *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04.

reasonably inferred that Pennick was intoxicated while operating a motor vehicle. Shaunna Johnson, Pennick's girlfriend, testified that on the night of his arrest, Pennick had been drinking. Although Johnson did not know how much Pennick had been drinking that night, she acknowledged that she had fixed him a margarita earlier in the evening. Also, Chassie Nuckols, Johnson's niece, testified that the three of them had attended a party earlier that night, from 5:00 to 11:00 p.m., and that she had observed Pennick drinking beer and margaritas "most of the time" during the party. Based on her observations, Nuckols believed Pennick to be intoxicated at the time they left the party. According to Nuckols, after they left the party, Johnson drove Pennick back to Nuckols's house but, upon arrival at the house, gave Pennick the keys to her car and allowed him to drive to New Katy to get fireworks. When Pennick did not return by midnight, Johnson and Nuckols went out to search for him and found the vehicle in a ditch, with Pennick in the driver's seat, "spinning the tires, trying to get it out of the ditch."

Both Johnson and Nuckols provided testimony from which the jury could have reasonably inferred that Pennick was acting in a manner consistent with intoxication when they found him. Johnson testified that she and Pennick "were kind of screaming at each other. He had got out the car, and I was still screaming at him and he was yelling at me." Nuckols added that Pennick "started calling [Johnson] names, being real aggressive, as far as arguing with her, telling her to get the hell on, and he will deal with it." Johnson testified that Pennick's behavior toward her prompted her to call the police. Nuckols testified that when Deputy Orts arrived, Pennick was "real belligerent with the comments he was making" to the officer, including "cursing at the officer and calling her names."

8

Finally, the jury heard evidence regarding Pennick's blood alcohol level at around the time he operated the motor vehicle. Jamie Mraz, a forensic scientist with the Department of Public Safety, testified that at the time Pennick's blood was drawn, approximately four hours after his arrest, his blood alcohol level was .157 grams of alcohol per 100 milliliters of blood. Based on that number and the information he had concerning the time when Pennick was arrested, Mraz extrapolated that Pennick's blood alcohol level was "most likely between 0.192 to 0.262 grams of alcohol per 100 milliliters of blood" at the time Orts came into contact with Pennick, which, according to Johnson and Nuckols, was between ten and fifteen minutes after they had discovered him in the ditch. From this and other evidence, the jury could have reasonably found that Pennick was intoxicated at the time he operated a motor vehicle.

We also find no merit in Pennick's contention that the evidence is insufficient to prove that he was operating the vehicle in a "public place." A "public place" is defined as "any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops."[16] Nuckols testified that the vehicle was stuck in a ditch off the side of the road near the intersection of Armstrong Avenue and New Katy Lane. According to Nuckols, those streets were public roads. Nuckols added that the ditch was accessible from the street without needing to go through a fence or a wall. Similarly, Deputy Orts testified that the ditch was located "just off the roadway" by several feet, was accessible to the public, and was not separated from the roadway by a shoulder or curb. Additionally, Johnson acknowledged in her testimony that in order

---

[16] Tex. Penal Code § 1.07(a)(40).

9

for Pennick to get from Nuckols's house to where he was found, he had to drive on several public streets, including Highway 290. From this and other evidence, the jury could have reasonably found that Pennick had operated a motor vehicle in a public place.

Based on the combined and cumulative force of the evidence summarized above and all reasonable inferences therefrom, considered in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Pennick committed the offense of driving while intoxicated.

We overrule Pennick's second issue.

## CONCLUSION

We affirm the order placing Pennick on community supervision.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   December 2, 2015

Do Not Publish