

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| EDWARD ROJAS, | § | No. 08-23-00305-CR |
| Appellant, | § | Appeal from the |
| v. | § | 437th Judicial District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2021-CR-8474) |

## MEMORANDUM OPINION [1]

Following a jury trial, Appellant was convicted on four counts of indecency by contact with a minor child and sentenced to 10, 13, 15, and 19 years' confinement, all to run concurrently. Appellant challenges his conviction based on the trial court's exclusion of CPS records allegedly documenting a prior false outcry by the child. Because the evidence was inadmissible under Rule 608(b) of the Texas Rules of Evidence and otherwise lacked relevance or was excluded under Rule 403, we affirm the trial court's judgment of conviction.

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. 41.3.

## A. June 2018 outcry against Appellant.

C.G. (the father) and D.M. (the mother) are the parents of two daughters, ages ten and 12.[3] In 2018, during a difficult time financially for the parents, the girls resided with their paternal grandmother during school weeks. The parents spent family time with their daughters on the weekends, returning them to their grandmother's home each Sunday afternoon. At the time of this arrangement, the grandmother worked from 10 a.m. to 6:30 p.m. daily, generally arriving home before 7:30 p.m. The girls were dropped off by the school bus after 3:30 p.m. each afternoon. Appellant, who was the grandmother's boyfriend and lived with her at the time, supervised the girls until their grandmother arrived home each evening.

One Sunday afternoon in June 2018, as the family made their weekly trip back to the grandmother's home, the older daughter, A.Z., then age 7, became extremely anxious and began to cry, stating "Please don't make me go." Greatly concerned, the parents asked A.Z. multiple times what was wrong. A.Z. initially only said Appellant's first name. After prompting, A.Z. explained that, while at her grandmother's home, Appellant had kissed her on the lips more than once. After hearing this revelation, the parents drove to another relative's home where they notified police. In their respective statements to detectives that day, the parents recounted that A.Z. also informed them that Appellant had kissed her vagina at least twice; Appellant would sometimes

---

[2] Our factual recitations are taken from the trial court record. Because Appellant does not challenge the sufficiency of the evidence to support his conviction, we set forth an abbreviated factual background as relevant to his issues on appeal, stated in the light most favorable to the verdict.

[3] To protect the identity of the minor child, we refer to the minor complainant and her parents either by their initials or as "the child," "the mother," or "the father."

grab A.Z.'s hand and force her to touch his penis under his clothing; and some of these events occurred when A.Z. was alone with Appellant in A.Z.'s grandmother's bedroom.

Appellant was charged with four counts of indecency by contact with a minor child based on incidents of sexual contact with A.Z. in April and May 2018. The trial began in October 2023. Before empaneling the jury, the court heard arguments on the State's verbal *in limine* motion that addressed two pieces of evidence important for this appeal: (1) A.Z.'s father's prior sexual assault conviction and former status as a registered sex offender; and (2) a claimed false prior outcry by A.Z. when she was three years old. We step back to explain the nature of that evidence.

### B. Prior 2013 outcry documented in CPS records.

The State produced the Child Protective Services (CPS) records for A.Z's June 2018 outcry to Appellant during discovery. The records noted that A.Z.'s father informed CPS that he had once been on the registered sex offender list. He was placed on the list in 2005 after being convicted as a juvenile in March 2000 of felony aggravated sexual assault of his then three-year-old sister. His name was removed from the registry in 2015.

The CPS records also briefly recount a prior outcry by A.Z. against her father, initiated when "his mother-in-law made allegations against him" on A.Z.'s behalf. Although CPS personnel could not access the original case file, the notes from the 2018 file indicate that A.Z. had previously told her maternal grandmother that her father was "kissing her vagina and touching her butt." A summary of the CPS interview with A.Z.'s mother, however, noted: (1) A.Z.'s mother did not have a relationship with her own mother (A.Z.'s maternal grandmother); (2) the maternal grandmother wanted to take the children away after learning A.Z.'s father was a registered sex offender; and (3) the maternal grandmother tried to coach A.Z. into making sexual assault allegations so the children would be removed from the home. The prior case, reported in 2013 when A.Z. was three years old,

3

was ruled out after the CPS investigator told A.Z.'s mother that it appeared her daughter had been coached.

### C. Trial court's exclusion of evidence before and during trial.

#### (1) Exclusion of CPS records.

In its pretrial *limine* motion, the State argued the above-described evidence was not relevant, would be confusing to the jury, and was more prejudicial than probative under a Rule 403 analysis.[4] Appellant's counsel claimed the CPS records documented a prior false outcry by the minor child against her own father. On that basis, Appellant's counsel urged that the prior outcry and the father's status as a registered sex offender were relevant and probative to an "alternate suspect" theory. Hearing this theory of admissibility, the State expanded its motion, claiming any such inquiry would amount to "backdoor improper impeachment" of the child's character and veracity—something specifically prohibited by Rule 608(b) of the Texas Rules of Evidence.[5] Without enumerating the grounds for its ruling, the court granted the State's motion *in limine*, instructing Appellant's counsel to approach if there was another way to admit the evidence.

Just before the State presented its case, Appellant's counsel re-urged his entitlement to inquire into A.Z.'s prior false outcry and her father's prior conviction for sexual assault, arguing both were relevant to the child's propensity for untruthfulness and Appellant's "alternate perpetrator" defense. In this exchange, Appellant's counsel conceded that there was no evidence

---

[4] Tex. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.").

[5] Tex. R Evid. 608(b) ("Except for a criminal conviction under Rule 609, a party may not inquire into or offer extrinsic evidence to prove specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness."). Appellant's counsel later conceded that the father's March 2000 felony conviction was too remote to be admitted under Rule 609.

4

that A.Z. had lied or admitted the allegations were false, clarifying that the CPS records showed it was A.Z.'s maternal grandmother who lied about the allegations. The trial court confirmed the prior ruling that Appellant's counsel could not discuss the prior outcry with the child.

**(2) Cross-examination of child regarding excluded evidence prohibited.**

A.Z. was 12 years old at the time of her trial testimony. After confirming her awareness of what it means to be "in trouble," A.Z. stated she was seven years old and living with her paternal grandmother and Appellant when the incidents occurred. She testified that she sometimes spent time alone with Appellant while her grandmother was at work. Sometimes A.Z., her sister, her grandmother and Appellant all slept together in the same bedroom. Sometimes, only A.Z. and Appellant were in the bedroom; when that happened, Appellant would close the door. While alone in the bedroom, Appellant would touch the body part A.Z. uses to urinate with his lips (over her clothes). Sometimes Appellant kissed A.Z. on her lips. At least three times, Appellant made A.Z. touch his penis under his clothes. The child was sad, scared and confused when these things happened. Because her parents had discussed this topic with her, A.Z. knew her private parts should not be touched by other people. Appellant had been touching A.Z. for about two months before she told her parents what was happening.

During cross-examination, Appellant's counsel asked the court in a bench conference if he could inquire whether the child had ever previously made accusations like those she was making against Appellant. Appellant's counsel argued the inquiry went not to character, but to the child's veracity. The State objected on relevance grounds and improper impeachment. Clarifying that nothing prevented Appellant's counsel from asking the child whether she understood the difference between the truth and a lie, the court denied the request.

5

**(3) Offer of proof.**

Outside the jury's presence, Appellant's counsel made an offer of proof, tendering two pages of the CPS records, and calling A.Z.'s mother as a witness. The mother recalled the prior instance in which A.Z., then age three, allegedly made claims of molestation against her own father. A.Z. never told the mother about those claims; according to the mother, A.Z. never told anybody. After first learning that A.Z.'s father was a registered sex offender, the maternal grandmother had "just assumed" something bad was happening. The maternal grandmother never told the mother, "A.Z. told me this;" the maternal grandmother only said she "just thought that [some type of molestation] could happen." A.Z.'s parents decided to "ease [the maternal grandmother's] assumptions and go through" with the CPS investigation.

**(4) Additional testimony, verdict and sentencing.**

A.Z.'s younger sister, age 5 at the time of the alleged incidents, also testified at trial. The younger sister recalled that, on at least one occasion, Appellant and A.Z. were alone in Appellant's bedroom with the door locked. The younger sister knew the door was locked because she tried to open it.

After the State closed its case, Appellant rested without presenting evidence. The jury found Appellant guilty on all counts, assessing his punishment at 13 years for Count 1, 19 years for Count II, ten years for Count III and 15 years for Count IV. The trial court then imposed the sentence, ordering all counts to run concurrently.

## II. Issues On Appeal

Appellant asserts the trial court abused its discretion when, by granting the State's *limine* motion, it excluded CPS reports documenting a prior outcry by the minor complainant against her

6

own father. According to Appellant, the exclusion of those records (1) prohibited Appellant from questioning the minor complainant's propensity for truthfulness or untruthfulness, especially where the prior outcry turned out to be false; and (2) prevented Appellant from presenting an "alternate perpetrator" defense in support of his innocence.

## III. DISCUSSION

### A. Standard of review.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Frnka v. State*, No. 04-08-00650-CR, 2009 WL 2882939, at *2 (Tex. App.—San Antonio September 9, 2009, no pet.) (mem. op., not designated for publication) (noting trial court's decision to limit cross-examination is not reversible absent a clear abuse of discretion). This standard equally applies when a trial court excludes evidence that a defendant asserts is necessary to establish his defense. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) (en banc).

A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Henley*, 493 S.W.3d at 83; *Watson v. State*, 421 S.W.3d 186,190 (Tex. App.—San Antonio 2013, pet. ref'd). Stated otherwise, a trial court abuses its discretion when it acts "without reference to any guiding rules and principles or acts in a manner that is arbitrary or capricious." *Lam v. State*, 25 S.W.3d 233, 236–37 (Tex. App.—San Antonio 2000, no pet.). Nonetheless, a trial court is given wide latitude in the decision to admit or exclude evidence. *Strache v. State*, No. 04-12-00731-CR, 2013 WL 2368301at *2 (Tex. App.—San Antonio May 29, 2013) (mem. op., not designated for publication). This is because "trial courts . . . are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Winegarner v. State*,

235 S.W.3d 787, 791 (Tex. Crim. App. 2007). On that basis, a trial court's evidentiary ruling will be upheld if it is correct under any applicable theory of law. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

### B. Cross-examination limited by Texas Rule of Evidence 608(b).

Appellant argues the trial court's exclusion of the CPS records prevented cross-examination to show that the child had previously made a similar but false accusation. The State responds that information relating to the prior outcry is a collateral matter on which impeachment is prohibited under Rule 608(b) of the Texas Rules of Evidence.

"Trials involving sexual assault . . . raise particular evidentiary concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue." *See Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). This is especially true because sexual assault cases sometimes lack corroborating evidence to show who, in the conflicting "he said, she said" testimony, is telling the truth. *See id*. Still, "most questions concerning cross-examination may be resolved by looking to the Texas Rules of Evidence." *Id.* Rule 404 of the Texas Rules of Evidence governs character evidence.[6] Under that rule, a defendant may offer evidence of a pertinent character trait—such as truthfulness—of any witness. *See id.* at 563 (citing Tex. R. Evid. 404(a)(3)). The witness' general character for truthfulness may only be shown, however, through reputation or opinion testimony. *Id.*

---

[6] According to applicable portions of Rule 404: "(a)(1) '*Prohibited Uses*.' Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait . . . (a)(3) '*Exceptions for a Victim*.' (A) In a criminal case, . . . , a defendant may offer evidence of a victim's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it . . . (b) 'Crimes, Wrongs, or Other Acts.' (1) '*Prohibited Uses*.' Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See* Tex. R. Evid. 404.

In contrast, Rule 608(b) prohibits attacks on a witness' credibility through specific instances of conduct inquired into on cross-examination or proffered by extrinsic evidence. Tex. R. Evid. 608(b); *see Ramirez v. State*, 802 S.W.2d 674, 676 (Tex. Crim. App. 1990, reh'g denied) (en banc). The Texas Court of Criminal Appeals has held that the terms of the rule are "very restrictive" and allow for no exceptions, other than conviction of a crime as allowed by Rule 609.[7] *Ramirez*, 802 S.W.2d at 676. Relatedly, a party may not impeach a witness on a collateral matter. *Id.* at 675; *Flannery v. State*, 676 S.W.2d 369, 370 (Tex. Crim. App. 1984) (en banc).[8] A matter is collateral if the cross-examining party would not be entitled to prove the matter as part of his case tending to establish his plea. *Id.* (citing *Shipman v. State*, 604 S.W.2d 182, 184 (Tex. Crim. App. 1980)).

Appellant claims his cross-examination of the child regarding the prior "false" outcry would not be an attack on her character, placing it outside of Rule 608(b). However, that line of inquiry could serve no other purpose. Questioning the child about the prior false outcry allegedly to demonstrate her untruthfulness serves no other purpose than to have the jury infer, "if she lied then, she is lying now." *See Hammer*, 296 S.W.3d at 564 (reasoning that attempts to impeach based on "Once a thief, always a thief" and "Once a liar, always a liar" conclusions are barred by Rule 608(b)); *see also Pierson v. State*, 426 S.W.3d 763, 772 (Tex. Crim. App. 2014) (confirming no abuse of discretion where trial court prohibited cross-examination regarding complainant's alleged

---

[7] The Rule itself contains an exception where the witness has been convicted of a crime. *See* Tex. R. Evid. 608(b).

[8] One exception to this rule lies where the witness voluntarily testifies to a collateral matter, leaving a false or misleading impression. *See Lopez v. State*, 928 S.W.2d 528, 531 (Tex. Crim. App. 1996) (en banc); *Hammett v State*, 713 S.W.2d 102, 105–06 (Tex. Crim. App. 1986) (en banc). For example, "should the accused nevertheless falsely insinuate during his direct examination that he has never been 'in trouble,' the State may expose that falsehood just as it may any other falsely asserted collateral matter. The inference that is permissible from such exposure is that if the accused lied or was in error as to a collateral matter (especially one implicating his aptitude for getting in trouble with the law), he is likely to have lied . . . in the balance of his testimony—those aspects of his testimony that *are* relevant to material issues in the case." *Hammett*, 713 S.W.2d at 105–06.

prior false abuse allegation); and *Alford v. State*, 495 S.W.3d 63, 68 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (confirming a cross-examiner may not elicit testimony for sole purpose of showing witness is generally dishonest and, therefore, should not be believed in current case).

The record confirms Appellant did not meet his burden of proof in demonstrating that his desired line of questioning "was anything more than a prelude to impeachment on a collateral matter and an impermissible attempt to attack" the child's general credibility with evidence of specific instances of conduct. *See Pierson*, 426 S.W.3d at 772 (citing Tex. R. Evid. 608(b)). Thus, the trial court did not abuse its discretion in excluding the CPS records and disallowing the proffered cross-examination testimony. Appellant's first point of error is overruled.

### C. Failure to demonstrate sufficient nexus for "alternate perpetrator"

Appellant also claims the trial court's exclusion of the CPS records "essentially gutted" his ability to establish his innocence by showing an "alternate perpetrator" committed the crime for which he was charged. He argues the jury's consideration of a factually-similar prior outcry would have raised a reasonable doubt as to who inappropriately touched the child.[9] In response, the State contends Appellant's claim was "mere speculation" insufficient to demonstrate the requisite nexus connecting the crimes charged against Appellant with A.Z.'s father. *See Wiley v. State*, 74 S.W.3d 399, 405–406 (Tex. Crim. App. 2002) ("Although a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the

---

[9] Appellant contends the CPS records confirm the details of A.Z.'s prior outcry are factually similar to the subject charges against Appellant as the father was also accused of indecency with a child in the same way (by kissing the child's vagina)."

10

alleged 'alternative perpetrator.'"); *Villa v. State*, No. 04-07-00095-CR, 2008 WL 372321, at *2 (Tex. App.—San Antonio February 13, 2008, no pet.) (mem. op., not designated for publication). The State also argues Appellant's attempts to frame A.Z.'s father as the "alternate perpetrator" would have confused the jury and so would have been more prejudicial than probative under the Rule 403 balancing test.

Mere speculation is insufficient to establish the nexus that another person may have committed the crime. *See Lopez v. State*, 314 S.W.3d 54, 61 (Tex. App.—San Antonio 2010, pet ref'd); *Dickson v. State*, 246 S.W3d 733, 739 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). But speculation is all that Appellant has. After conceding the prior judgment against A.Z.'s father was too remote for admission, Appellant would have relied exclusively on the CPS records. But those records suggest nothing more than an unsubstantiated allegation against A.Z's father. *See Wiley*, 74 S.W.3d at 408 (confirming "highly speculative" allegation that, "*perhaps* [a third party] was *somehow* involved" was properly excluded under Rule 403 analysis) (emphasis in original).

Even if admitted as evidence, the CPS records and testimony would only show (1) the mother's certainty that her own mother fabricated the allegations (after first learning A.Z.'s father was a registered sex offender) because the maternal grandmother wanted the father removed from the home; (2) the child never made the claims to anyone; (3) the maternal grandmother admitted to the mother that the child never told her anything specific; (4) the maternal grandmother just assumed the child's occupancy in a home with a registered sex offender meant something bad was happening; and (5) the CPS investigator ruled out the case because she believed the child's allegations were coached. Nothing in Appellant's offer of proof connected A.Z.'s father with crimes that occurred while Appellant was alone with the child *in the father's absence*. *See Arrellano v. State*, No. 08-18-00198-CR, 2020 WL 5056516, at *4–5 (Tex. App.—El Paso August

11

27, 2020, no. pet) (not designated for publication) (citing *Wiley*, 74 S.W.3d at 408) (confirming that, where record lacked evidence demonstrating requisite nexus, appellant failed to show allegedly erroneous trial court ruling violated his constitutional right to present a defense).

As the party seeking admissibility, Appellant carried the burden to demonstrate the CPS records were material and relevant. *Pierson v. State*, 426 S.W.3d 763, 770 (Tex. Crim. App. 2014) (confirming proponent of evidence must identify basis of admissibility for trial court); *Miller*, 36 S.W.3d at 507 (confirming defendant has fundamental right to present evidence of defense as long as evidence is relevant and not excluded by an established evidentiary rule). Appellant failed to meet that burden when he failed to demonstrate the requisite nexus between the charged crimes and A.Z.'s father as the "alternate perpetrator." *See Roderick v. State*, 494 S.W.3d 875, 877 (Tex. App.—Houston [14th Dist.] 2016, no pet.).[10] Thus, Appellant also fails to demonstrate that the trial court abused its discretion in excluding the CPS evidence as part of Appellant's alternate perpetrator defense. Appellant's second point of error is overruled.

## IV. CONCLUSION

Finding no abuse of discretion in the trial court's exclusion of the subject evidence, the trial court's judgment is affirmed.

---

[10] We will uphold a trial court's evidentiary ruling if it is correct under any theory of law applicable to the case. *See Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *Alford v. State*, 495 S.W.3d 63, 66 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd.). Where, as here, the State specifically objected to the evidence on the grounds that it was prejudicial, thus invoking Rule 403, the judge is presumed to have engaged in the required balancing test and we "refuse to hold the silence in the record implies otherwise." *See Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997) (en banc). Based on the marginal (if any) relevance of the evidence of a false allegation by the maternal grandmother without any real basis in fact, we could also easily conclude that the trial court would not have abused its discretion in finding the evidence excludable under Rule 403.

JEFF ALLEY, Chief Justice

November 5, 2024.

Before Alley, C.J., Palafox, and Soto, JJ.

(Do Not Publish)